## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

TRICIA C. DEFOUR, JOHN COCKRELL, and : 
DENISE COCKRELL, *on behalf of themselves and* : 
*all similarly situated consumers*, :
:
Plaintiffs, :
:
v. :     Civil Action No. 3:22-cv-126
:
FCI LENDER SERVICES, INC., :
:
Defendant. :
_____ :

## CLASS ACTION COMPLAINT

Plaintiffs Tricia C. DeFour, John Cockrell, and Denise Cockrell, on behalf of themselves and all similarly situated consumers, by counsel, file this Complaint against Defendant FCI Lender Services, Inc. ("FCI"). In support of their claims, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.    This is an action for statutory and actual damages; costs; and attorneys' fees brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

2.    In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

3.    The FDCPA carries out its purpose by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices. §§ 1692b–1692j.

4.      One prohibited debt-collection practice is making false or misleading representations in connection with the collection of any debt, including false representations about the amount or legal status of a debt. 15 U.S.C. 1692e.

5.      In this case, FCI violated the FDCPA by charging Plaintiffs—a frontline healthcare worker and a military veteran family coping with a combat-related disability—improper late fees, interest, and charges that they did not owe on their second mortgages.

6.      FCI assessed these improper charges for its own financial benefit. Indeed, under its agreement with Plaintiffs' respective lenders, FCI could keep a substantial portion of any fees that it collected from the Plaintiffs.

7.      The Cockrells also assert a claim against FCI for unjust enrichment because FCI collected from the Cockrells fees that they did not owe.

8.      Because FCI assessed and collected these fees according to a standard fee schedule, Plaintiffs bring their claims as a class action under Federal Rule of Civil Procedure 23.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). It also has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.

10.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division.

## PARTIES

11.      Ms. DeFour is a natural person who lives in Henrico County, Virginia. She is a consumer as defined by 15 U.S.C. § 1692a(3).

12.     Mr. and Mrs. Cockrell are each a natural person who, at the time of the conduct alleged here, resided in Prince William County, Virginia. They are consumers as defined by 15 U.S.C. § 1692a(3).

13.     FCI is a California corporation with its principal place of business in Anaheim, California. It is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTS

### *FCI'S Business Practices*

14.     FCI services mortgage loans for the loans' owners or investors.

15.     FCI advertises itself as a "specialty loan servicer" for "non-performing loans."[1]

16.     On its website, FCI defines "non-performing loans" as "any loan that has missed the third payment, or more."[2]

17.     FCI's website also represents that manages non-performing loans by "facilitating the restructure of loans per Lender directions, presenting Lender offered FPA's (Foreclosure Prevention Alternatives), or by Providing Foreclosure Support if workouts are not possible, so the Lender can get back and sell the properties. It is staffed by experts at skip trace, collection, Foreclose Prevention Alternative workouts, and foreclosures."[3]

---

[1] FCI Lender Services, Inc., *Loan Servicing Programs*, https://www.myfci.com/LoanServicing. html (last visited Feb. 16, 2021).

[2] *Id.*

[3] *Id.*

18.     Servicing non-performing loans is a regular part of FCI's business activities. Upon information and belief, it comprises a substantial part of its business.

19.     Servicing non-performing loans is also highly profitable for FCI. FCI charges lenders $95 per month for each non-performing loan that it services. Along with this monthly fee, FCI also charges many other fees, ranging from $10 to $7,500, depending on the service.[4]

20.     For example, FCI receives a percentage of all late fees that it collects for the lender. For example, if a loan is under $500,000, FCI retains 50% of any late fee that it collects.[5]

21.     FCI also charges $350 for responding to qualified written requests, or $500 if it has to expedite its response.[6]

22.     And many of these other fees that FCI charges relate to foreclosure.[7]

23.     FCI is therefore motivated to assess late fees, and it ultimately forces consumers into foreclosure to collect those fees.

24.     FCI uses the mail and telephone to collect these debts from consumers.

25.     Because it regularly collects defaulted debts for others, and those debts are in default when they are transferred to FCI, FCI is a debt collector under the FDCPA.

### Ms. DeFour's Second Mortgage

26.     Ms. DeFour bought her home in Henrico County, Virginia in December 2006.

27.     As was common at that time, Ms. DeFour financed her house using two mortgages.

---

[4] FCI Lender Services, Inc., *General Fee Schedule*, https://www.myfci.com/GeneralFeeSchedule. html (last visited Feb. 16, 2021).

[5] *Id.*

[6] *Id.*

[7] *Id.*

28.     Ms. DeFour made all payments owed on her second mortgage through November 2011.

29.     In December 2011, however, she stopped receiving mortgage statements for her second mortgage, at which time her second mortgage was transferred to another lender.

30.     Ms. DeFour's credit reports show that her loan was current through this time.

31.     Ms. DeFour did not receive notice of the transfer or notice identifying which entity she should make her monthly mortgage payments.

32.     Ms. DeFour did not make any payments on her loan after November 2011.

33.     Ms. DeFour received no other notices about her second mortgage until 2021.

34.     In 2021, Ms. DeFour learned that a company called Sortis Financial had sent some mail to her mother's house—where she had not lived since she bought her home in 2006.

35.     These statements appeared to relate to her second mortgage.

36.     For example, a March 21, 2021 statement stated that she owed a total balance of $33,563.86. It also stated that it was not charging her any interest or late fees on the loan.

37.     Upon information and belief, sometime after this statement, United Asset Management bought Ms. DeFour's second mortgage and hired FCI to service the loan.

38.     Ms. DeFour's second mortgage was delinquent when it was transferred to FCI, since she had made no payments on the loan since November 2011.

39.     FCI's Borrower Welcome Letter, dated May 10, 2021, stated that the outstanding balance on the loan was $67,065.84.

40.     This representation was false. There were no permissible fees or interest that could have caused the balance owed on the loan to double in just over two months.

41.      In June 2021, FCI started sending monthly mortgage statements to Ms. DeFour's mother's house.

42.      These documents also made several false and misleading statements about Ms. DeFour's second mortgage.

43.      The first statement, for example, stated that the amount she owed on the loan was now $69,558.56.

44.      The first statement also included a representation that there were $1,805.23 in fees and charges that had been assessed to the loan.

45.      Upon information and belief, these fees and charges were improper and not authorized by the note or deed of trust.

46.      Ms. DeFour sent a letter to FCI on or around August 3, 2021 asking it to explain why it was attempting to collect money from her.

47.      FCI responded to Ms. DeFour's dispute on August 20, 2021.

48.      FCI's response included several documents that purportedly verified the outstanding balance on the loan, including a payoff statement, a reinstatement calculation, a notice of servicing transfer, a borrower welcome letter, and the loan's Note and Deed of Trust.

49.      These documents contained several false statements and misrepresentations about Ms. DeFour's mortgage.

50.      For example, both the payoff quote and reinstatement calculation stated that Ms. DeFour had stopped making payments in August 2011.

51.      This was false. Ms. DeFour made payments on her second mortgage through November 2011.

52.      The payoff quote also stated that Ms. DeFour owed $34,512.04 in unpaid interest.

53.     According to the detailed breakdown attached to the payoff quote, this amount included interest assessed from August 2011 through the date of the payoff, even though the prior servicers had waived interest on the loan.

54.     It also included $1,820.40 in late fees, accrued over 120 months at $15.17 a month, even though prior servicers expressly waived this charge.

55.     In December 2021, Ms. DeFour managed to log onto FCI's web portal and learned that FCI charged her $350 for responding to her dispute.

56.     This charge was improper because it was not allowed by Ms. DeFour's Note or Deed of Trust.

57.     FCI also referred Ms. DeFour's loan to foreclosure and scheduled a sale for December 21, 2021.

58.     But before the foreclosure sale, Ms. DeFour never received notice that complied with Virginia Code § 55.1-321.

59.     Ms. DeFour was extremely distraught and suffered emotional distress because any foreclosure sale for this inflated amount would have robbed her of all the equity she had built in her property.

### *Mr. and Mrs. Cockrell's Second Mortgage*

60.     The Cockrells bought their home in Prince William County, Virginia in May 2007.

61.     Like Ms. DeFour, the Cockrells financed their home using two mortgages.

62.     In 2018, the Cockrells experienced financial difficulties, in part because Mr. Cockrell is a disabled veteran and had trouble maintaining work. As a result, the Cockrells could not keep making payments on their second mortgage.

63.     At this time, Specialized Loan Servicing ("SLS") serviced the Cockrells' second mortgage.

64.     In June 2018, Mr. Cockrell filed for Chapter 7 bankruptcy.

65.     Because of this bankruptcy, Mr. Cockrell's second mortgage was discharged and he no longer had a legal obligation to pay it.

66.     After the bankruptcy, SLS stopped assessing late fees on the Cockrells' second mortgage.

67.     For example, SLS sent the Cockrells statements in June 2018, October 2018, and November 2018, each showing that no late fees had been charged in those months.

68.     Then, in June 2019, the servicing of the Cockrells' loan was transferred to FCI.

69.     The Cockrells' second mortgage was delinquent when it was transferred to FCI, since they had made no payments on the loan since before their bankruptcy filing.

70.     FCI started sending monthly statements to the Cockrells about their second mortgage.

71.     These documents made several false and misleading statements.

72.     For example, FCI's April 19, 2021 statement stated that the Cockrells owed 76 late payments, which included late fees that SLS had expressly waived.

73.     This statement was false. The Cockrells did not owe these fees because SLS had decided not to charge them, and FCI was not permitted to retroactively assess them.

74.     FCI assesses as many default-related charges as it can because it knows it can obtain payment of these charges from the equity of consumers' homes at the foreclosure sale.

75.     Before the foreclosure sale, the Cockrells never received a notice that complied with Virginia Code § 55.1-321.

76.    The Cockrells' home was sold at a foreclosure sale in April 2021.

77.    As part of the sale, FCI received the improper fees and charges that FCI assessed to their second mortgage.

78.    Their home was sold to a third party, so because of FCI's conduct, the Cockrells lost substantial equity that they had worked hard to obtain. Both Mr. and Mrs. Cockrell suffered actual damages, like moving costs, and emotional distress because of the sale of their home.

**COUNT ONE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(Plaintiffs' Class Claims against FCI)**

79.    Plaintiffs incorporate the preceding allegations.

80.    Under Federal Rule of Civil Procedure 23, Plaintiffs bring this action for themselves and on behalf of the following class ("Improper Late Fee Class"):

> All consumers: (1) with a non-performing loan serviced by FCI; (2) to whom FCI sent a monthly statement or other written correspondence in the one year predating the filing of the lawsuit; (3) that contained a late fee or interest assessed by FCI for any payments or interest charges that were due prior to the time that FCI became the servicer.

81.    The Cockrells also bring this action for themselves and the following sub-class of individuals:

> All consumers: (1) with a non-performing loan serviced by FCI; (2) to whom FCI sent a monthly statement or other written correspondence in the one year predating the filing of the lawsuit; (3) that contained a fees or interest charges assessed by FCI for any late fees or interest that were due prior to the time that FCI became the servicer and (4) the consumer paid any amount towards those late fees.

82.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. Upon information and belief, FCI services thousands of non-performing loans and subjects all of them to the same procedures for the assessment of late fees. The class members' names and addresses are

identifiable through FCI's internal business records, and they may be notified of this litigation by published or mailed notice.

83.     **Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether FCI is a debt collector; (2) whether FCI violated § 1692e of the FDCPA by making false representations about the Plaintiffs' and putative class members' debts; and (3) the appropriate amount of statutory damages.

84.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. They are also entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

85.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are each an adequate representative of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. Plaintiffs have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. Plaintiffs and their counsel will fairly and adequately protect the putative class members' interests. Neither Plaintiffs nor their counsel have any interests that might cause them to not vigorously pursue this action.

86.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome

and expensive. It would be almost impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by FCI's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

87.     FCI violated § 1692e of the FDCPA by using false, deceptive, and misleading representations in connection with the collection of Plaintiffs' and the putative class members' accounts.

88.     For example, FCI falsely represented that Plaintiffs and the putative class members owed late fees and interest that their former loan servicers had elected not to charge.

89.     These statements were false. Plaintiffs and the putative class members did not owe these late fees because, by not charging them, the prior loan servicers had waived them.

90.     Plaintiffs and each putative class member suffered a concrete injury in fact as a result of FCI's misrepresentation including, for example, an adverse impact on debt-making decisions and emotional distress.

91.     In addition, the actual damages subclass suffered actual damages when they paid these improper fees to FCI.

92.     Under 15 U.S.C. § 1692k, Plaintiffs seek statutory damages for themselves and each putative class member and their reasonable attorneys' fees and costs.[8] They also seek actual damages for the subclass in the amount of the improper fees that they paid to FCI.

### COUNT TWO:
### UNJUST ENRICHMENT
### (Mr. and Mrs. Cockrell's Class Claims against FCI)

93.     Plaintiffs incorporate the preceding allegations.

94.     Under Rules 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure, Mr. and Mrs. Cockrell seek certification of the following class ("Unjust Enrichment Class"):

> All consumers: (1) with a non-performing loan serviced by FCI; (2) to whom FCI assessed a late fee for any payments that were due prior to the time that FCI became the servicer; and (3) the consumer paid any amount towards those late fees in the three years predating the filing of this litigation.

95.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Mr. and Mrs. Cockrell allege that the class members are so numerous that joinder of all is impractical. Upon information and belief, FCI services thousands of non-performing loans and subjects all of them to the same procedures for the assessment of late fees. The class members' names and addresses are identifiable through FCI's internal business records, and they may be notified of this litigation by published or mailed notice.

96.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Mr. and Mrs. Cockrell and the putative class members conferred a benefit on FCI; (2) whether FCI

---

[8] Plaintiffs do not seek actual damages for emotional distress. But if class certification is denied and the action proceeds on an individual basis, Plaintiffs reserve the right to seek those damages.

knew or should have known of the benefit; (3) whether FCI's retention of the benefit would be unjust; and (4) the proper amount of damages.

97.     **Typicality. Fed. R. Civ. P. 23(a)(3).** The Cockrells claims are typical of the claims of each putative class member. They are also entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

98.     **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. The Cockrells are each an adequate representative of the putative class because their interests coincide with, and are not antagonistic to, the interests of the class members that they seek to represent. The Cockrells have retained counsel competent and experienced in class-action litigation, and they intend to continue to prosecute the action vigorously. The Cockrells and their counsel will fairly and adequately protect the putative class members' interests. Neither the Cockrells nor their counsel have any interests that might cause them to not vigorously pursue this action.

99.     **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be almost impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if the putative class members could afford individual litigation, it would be an unnecessary burden on the courts. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by FCI's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

100.    FCI knew that the Cockrells and the putative class members did not owe the late fees that their prior servicers had waived.

101.    Yet FCI charged the Cockrells and the putative class members these late fees.

102.    The Cockrells and the putative class members conferred a benefit on FCI when they paid these improper fees.

103.    FCI knew or should have known that these fees were improper and that they should have been reversed and repaid to Plaintiff and the putative class members.

104.    Because these fees are improper, it would be unjust for FCI to retain them.

105.    As a result, Plaintiff and the putative class members may recover the amounts they paid towards these improper fees and charges from FCI.

**COUNT THREE:**
**Violation of FDCPA, 15 U.S.C. § 1692f**
**(Plaintiffs' Individual Claim against FCI)**

106.    Plaintiffs incorporate the preceding allegations.

107.    FCI violated 15 U.S.C. § 1692f(6) by threatening foreclosure or foreclosing on Plaintiffs' home when there was no present right to possession of the property.

108.    FCI could not threaten foreclose or foreclose on Plaintiffs' home because it provided a defective notice under Virginia Code § 55.1-321. The notice was defective because it listed the incorrect amount of outstanding interest and fees, making it appear that Plaintiffs owed far more money than they did.

109.    There was therefore no right to foreclose or threaten to foreclose on Plaintiffs' homes. Virginia Code § 55.1-321(A).

110.    Yet FCI threatened Ms. DeFour with foreclosure. And it threatened and did foreclose on the Cockrells' home.

14

111.    Because of FCI's violations of 15 U.S.C. § 1692f(6), Plaintiffs suffered actual damages. Ms. DeFour suffered significant emotional distress and the Cockrells suffered emotional distress and the loss of equity in their home and moving expenses.

112.    Based on FCI's violation of § 1692f(6), Plaintiffs are entitled to actual damages, statutory damages, reasonable attorneys' fees, and costs, under 15 U.S.C. § 1692k.

WHEREFORE, Plaintiffs seek an order certifying the case as a class action on behalf of the proposed classes under Federal Rule of Civil Procedure 23, appointing Plaintiffs as class representatives, and Plaintiffs' counsel; an award of actual and statutory damages for Plaintiffs and the Classes as pleaded above; Plaintiffs' attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL.**

Respectfully submitted,
**PLAINTIFFS**

By:_____ */s/ Casey S. Nash*_____
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email:  kkelly@kellyguzzo.com
Email:  aguzzo@kellyguzzo.com
Email:  casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiffs*